UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION NO. |
| Plaintiff, | 21-CV- 5338 |
| | (          ,J.) |
| -against- | (          ,M.J.) |
| THE CITY OF NEW YORK,<br>NEW YORK CITY DEPARTMENT OF<br>EDUCATION, | **COMPLAINT** |
| Defendants. | |

---------------------------------------------------------X

The United States of America, by and through its attorney, Jacquelyn M. Kasulis, Acting United States Attorney for the Eastern District of New York, acting on behalf of the United States Environmental Protection Agency ("EPA"), alleges for its Complaint against Defendants, the City of New York, and the New York City Department of Education ("DOE") (collectively "Defendants"), as follows:

## NATURE OF THE ACTION

1. This is a civil action for Defendants' failure to properly operate and maintain approximately 1,329 oil-fired boilers at 566 New York City public school buildings in violation of the Clean Air Act ("CAA") and EPA's implementing regulations. EPA's regulations require Defendants to, among other things, periodically tune their oil-fired boilers so as to reduce emissions of hazardous air pollutants ("HAPs"). Defendants' failure to conduct the required boiler tune-ups have caused excess HAP and particulate matter ("PM") emissions, contributing to environmental harm and to the risk of adverse human health effects to the students attending public schools and to local communities. This action seeks injunctive relief and civil penalties for Defendants' violations of the CAA and EPA's regulations.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this judicial district under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b)(2) because a substantial part – approximately two thirds – of the DOE's violations occurred in Kings, Queens, and Richmond counties.

## DEFENDANTS

4. The City of New York is a political subdivision of the State of New York, duly formed as a municipality under the laws of the State of New York.

5. The DOE is a public agency of the City of New York, a municipality chartered under the laws of New York State. The DOE is the largest school district in the United States, serving over 1.1 million students at approximately 1,860 schools.

6. Between 2014 and 2018, the DOE operated approximately 1,329 oil-fired boilers ("boilers") that are the subject of this action.[1] These boilers were located at 566 individual school buildings throughout New York City. Approximately 799 of the boilers were located in Kings, Queens, and Richmond counties. Approximately 530 boilers were located in Manhattan and the Bronx.

7. Defendants are "municipalities" and "persons" as defined by Section 302 of the CAA, 42 U.S.C. § 7602(e)-(f).

---

[1] As a result of DOE periodically converting or replacing oil-fired boilers to utilize natural gas, of February 23, 2021, DOE operated approximately 1,166 oil-fired boilers subject to the Area Source Boiler Rule.

## STATUTORY AND REGULATORY FRAMEWORK

**The Clean Air Act and the Area Source Boiler Rule**

8. The CAA, 42 U.S.C. §§ 7401-7671q, was enacted by Congress in 1963, and has been subsequently amended, to promote public health and welfare by improving, strengthening, and accelerating programs for the prevention and abatement of hazardous air pollution from mobile and stationary sources.

9. Section 112(b) of the CAA, 42 U.S.C. §§ 7412(b), contains a list of HAPs, and Section 112(b)(2) of the CAA, 42 U.S.C. §§ 7412(b)(2), requires EPA to supplement that list.

10. HAPs are air pollutants acutely or chronically toxic to humans and harmful to the environment. HAPs are considered "hazardous" because, among other things, inhalation of them increases the risk of serious health effects, including cancer, birth, and developmental defects.

11. Under Section 112(c) of the CAA, 42 U.S.C. §§ 7412(c), EPA publishes a list of categories of major sources and area sources of listed HAPs for regulation.

12. An "area source" is a stationary source of HAPs that is not a "major source," i.e., it emits or potentially emits less than 10 tons per year of any HAP, or less than 25 tons per year of any combination of HAPs. 42 U.S.C. § 7412(a)(2).

13. A "stationary source" is any building, structure, facility, or installation which emits or may emit any air pollutant. *See* 42 U.S.C. §§ 7411(a) and 7412(a)(3).

14. Section 112(d) of the CAA, 42 U.S.C. §§ 7412(d), requires EPA to promulgate regulations for each category or subcategory of major source and area source listed under Section 112(c) to limit HAP emissions from those sources.

15. School buildings with oil-fired boilers are "area sources" that emit HAPs including non-mercury metallic HAPs (such as nickel), and organic HAPs (such as polycyclic organic

matter, or POM). An emission characteristic of these boilers is that the non-mercury metallic HAPs are a component of PM emissions. Accordingly, the Area Source Boiler Rule uses PM as a surrogate pollutant for controlling these HAPs.

16. In accordance with Section 112(d) of the CAA, EPA promulgated the National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Industrial, Commercial, and Institutional Boilers Area Sources, known as the Area Source Boiler Rule, effective March 21, 2011 (final rule) (amended Feb. 1, 2013 at 78 Fed. Reg. 7506 and Sep. 14, 2016 at 81 Fed. Reg. 63112), which can be found at 40 C.F.R. Part 63, Subpart JJJJJJ, §§ 63.11193 to 63.11237.

17. The Area Source Boiler Rule requires owners and operators of all existing, new, or reconstructed institutional oil-fired boilers located at an "area source" to:

   a. Submit an "Initial Notification" form no later than January 20, 2014, or within 120 days of the source becoming subject to the standard, which informs EPA that each of the owner's or operator's oil-fired boilers existing before the Area Source Boiler Rule's effective date is indeed subject to the Rule. *See* 40 C.F.R. §§ 63.11225(a)(2) and 63.9(b)(2).

   b. Conduct, by March 21, 2014, an initial tune-up (including inspection, cleaning, repair, and emissions measurements) for each affected boiler, with biennial or once-every-five-year tune-ups thereafter (depending on boiler size, type of fuel and operating hours). *See* 40 C.F.R. §§ 63.11214 and 63.11223.

   c. By March 21, 2014, have a qualified energy assessor perform, for oil-fired boilers with a heat input capacity of 10 million BTU per hour or greater, a one-time energy assessment to identify measures for improving energy efficiency. *See* 40 C.F.R. §§ 63.11196(a)(3), 63.11201, 63.11214(c), 63.11237, and Table 2 of the Area Source Boiler Rule.

   d. By July 19, 2014, submit a "Notification of Compliance Status" report no later than 120 days after the applicable compliance date. *See* 40 C.F.R. § 63.11225(a)(4).

   e. Following the initial tune-up required as of March 21, 2014, periodic tune ups are required for affected boilers, either biennially or once every five years, depending on the heat input capacity of the affected boiler. *See* 40 C.F.R. § 63.11223.

**Enforcement Provisions**

18. Under Section 112(i)(3)(A) of the Act, 42 U.S.C. § 7412(i)(3)(A), it is unlawful for any person to operate an existing source in violation of a standard, limitation or regulation promulgated under Section 112.

19. Under Section 113(b), 42 U.S.C. § 7413(b), the Administrator may commence a civil action for a permanent or temporary injunction or to assess and recover a civil penalty of up to $25,000 per day for each violations of Sections 112 of the CAA, 42 U.S.C. § 7412.

20. The maximum daily civil penalty amounts under Section 113(b)(2) the CAA are increased for inflation to $37,500 for violations occurring between January 12, 2009 and November 2, 2015, and to $101,439 per day for violations occurring after November 2, 2015 and for which penalties are assessed on or after January 13, 2020. 28 U.S.C. § 2461; 73 Fed. Reg. 75340 (Dec. 11, 2008), 78 Fed. Reg. 66644 (Nov. 6, 2013), 81 Fed. Reg. 43091 (July 7, 2016), 84 Fed. Reg. 2059 (Feb. 6, 2019), and 85 Fed. Reg. 1751 (Jan. 13, 2020).

**GENERAL ALLEGATIONS**

21. Defendants have, since 2014, owned and operated approximately 1,329 oil-fired boilers at 566 school buildings. One hundred sixty-five of those boilers, which were located at 66 individual school buildings, were large boilers with a heat input capacity of 10 million BTU per hour or greater.

22. Hundreds of DOE's oil-fired boilers are sited in low income or minority communities that experience disproportionate impacts from poor air quality. Oil-fired boilers emit HAPs, PM, and other air contaminants such as nitrogen oxides, which contribute to or exacerbate respiratory illnesses, including children's asthma, which disproportionately affect these communities.

23. Each of the Defendants' school buildings that has an oil-fired boiler is an "area source" as defined by Section 112(a)(2) of the CAA, 42 U.S.C. § 7412(a)(2), which are subject to the Area Source Boiler Rule.

24. Defendants did not submit any "Initial Notification" forms by January 20, 2014, or within 120 days after the source became subject to the standard, for any of its 1,329 oil-fired boilers.

25. Defendants did not conduct initial tune-ups for any of its 1,329 oil-fired boilers by March 21, 2014.

26. Defendants did not conduct energy assessments for 128 "large" oil-fired boilers, located at 52 schools, by March 21, 2014.

27. Defendants did not submit Notification of Compliance Status reports for any of their 1,329 oil-fired boilers by July 19, 2014.

28. After conducting initial tune-ups, Defendants, in 2020, failed to timely conduct periodic tune-ups for at least 238 oil-fired boilers.

29. As of February 23, 2021, Defendants' boilers were virtually all in compliance with the Area Source Boiler Rule's periodic tune-up requirements.

## CLAIMS FOR RELIEF

30. The United States incorporates by reference paragraphs 1 through 29 as if fully set forth herein.

### COUNT I
### Failure to Submit Initial Notifications

31. Defendants failed to submit Initial Notifications to EPA by January 20, 2014, for their oil-fired boilers, in violation of the Area Source Boiler Rule, 40 C.F.R. § 63.11225(a)(2).

## COUNT II
### Failure to Perform Initial Tune-Ups

32. Defendants failed to perform initial tune-ups of their oil-fired boilers by March 21, 2014, in violation of the Area Source Boiler Rule, 40 C.F.R. §§ 63.11214, 63.11223.

## COUNT III
### Failure to Conduct Energy Assessments

33. Defendants failed to perform energy assessments for 128 of their large oil-fired boilers with a heat input capacity of 10 million BTU per hour or greater by March 21, 2014, in violation of the Area Source Boiler Rule, 40 C.F.R. §§ 63.11201, 63.11214(c), 63.11237, and Table 2 of the Area Source Boiler Rule.

## COUNT IV
### Failure to Submit Notification of Compliance Status

34. Defendants failed to submit Notification of Compliance Status reports for their oil-fired boilers to EPA by July 19, 2014, in violation of the Area Source Boiler Rule, 40 C.F.R. § 63.11225(a)(4).

## COUNT V
### Failure to Conduct Periodic Tune-Ups

35. Defendants failed to perform periodic tune-ups of at least 238 of their oil-fired boilers, in violation of the Area Source Boiler Rule, 40 C.F.R. § 63.11223.

36. Each day of each failure by Defendants to comply with the Area Source Boiler Rule is a violation under Section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), for which the Defendants are liable to the United States for civil penalties.

37. Pursuant to Section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), for Counts I through V, Defendants are subject to appropriate injunctive relief to address their violations of the Area Source Boiler Rule.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court:

A. Order Defendants to conduct periodic tune-ups for the oil-fired boilers and then submit a comprehensive Notification of Compliance Status report detailing their full compliance under the Area Source Boiler Rule.

B. Order that Defendants be assessed a civil penalty pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and in accordance with the Debt Collection Improvement Act, 31 U.S.C. § 3701 *et seq*., and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, Title VII § 701.

C. Order Defendants to mitigate the harm caused by the oil-fired boilers' excess emissions that would not have occurred but for Defendants' noncompliance with the Area Source Boiler Rule's tune-up requirements.

D. Award the United States its costs and disbursements in this action; and

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

Dated: Brooklyn, N.Y.

September 27, 2021

JACQUELYN M. KASULIS
Acting United States Attorney
Eastern District of New York
Attorney for Plaintiff
271 Cadman Plaza East
Brooklyn, New York 11201

By: /s/ *Matthew Silverman*
MATTHEW SILVERMAN
Assistant U.S. Attorney
718-254-6409
matthew.silverman@usdoj.gov

8

Of Counsel:

ERICK R. IHLENBURG
Office of Regional Counsel
U.S. Environmental Protection Agency,
    Region 2